FILED

2010 Jul-08  PM 04:20
U.S. DISTRICT COURT
N.D. OF ALABAMA

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
EASTERN DIVISION

| | | |
|---|---|---|
| FELIX  E. HENRY, | ] | |
| | ] | |
| Plaintiff, | ] | |
| | ] | |
| vs. | ] | 1:08-cv-02050-LSC |
| | ] | |
| MICHAEL J. ASTRUE, | ] | |
| | ] | |
| Commissioner, | ] | |
| Social Security Administration, | ] | |
| | ] | |
| Defendant | ] | |

MEMORANDUM OF OPINION

I.    Introduction.

Plaintiff, Felix E. Henry, appeals from the decision of the Commissioner

of the Social Security Administration ("Commissioner") denying his

application for Supplemental Security Income ("SSI") and Disability Insurance

Benefits ("DIB").  Plaintiff timely pursued and exhausted his administrative

remedies and the decision of the Commissioner  is ripe for review pursuant

to 42 U.S.C. §§ 405(g), 1383(c)(3).

Plaintiff was sixty years old at the time of the Administrative Law

Judge's ("ALJ's") decision, and he had a high school education plus two years of college.   (Tr. at 306.)   His past work experience includes employment as a cook with various fast food restaurants.  *Id*. at 52, 306, 317.   Plaintiff claims that he  became disabled on June 27, 2005, due to twisted spine; diabetes; poor vision; breathing difficulties; head trauma; high blood pressure, and depression.  *Id*. at 52.

When evaluating the disability of individuals over the age of eighteen, the regulations prescribe a five-step sequential evaluation process.  *See* 20 C.F.R. §§ 404.1520, 416.920; *see also Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001).   The first step requires a determination of whether the claimant is "doing substantial gainful activity."   20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i).   If he or she is, the claimant is not disabled and the evaluation stops.  *Id*.  If he or she is not, the Commissioner next considers the effect of all of the physical and mental impairments combined.   20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii).   These impairments must be severe and must meet the durational requirements before a claimant will be found to be disabled.  *Id*.  The decision depends on the medical evidence in the record.  *See Hart v. Finch*, 440 F.2d 1340, 1341

(5th Cir. 1971). If the claimant's impairments are not severe, the analysis

stops. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). Otherwise, the

analysis continues to step three, which is a determination of whether the

claimant's impairments meet or equal the severity of an impairment listed

in 20 C.F.R. pt. 404, subpt. P, Appendix 1. 20 C.F.R. §§ 404.1520(a)(4)(iii),

416.920(a)(4)(iii). If the claimant's impairments fall within this category, he

or she will be found disabled without further consideration. *Id*. If they do

not, a determination on the claimant's residual functional capacity ("RFC")

will be made and the analysis proceeds to the fourth step. 20 C.F.R. §§

404.1520(e), 416.920(e).

The fourth step requires a determination of whether the claimant's

impairments prevent him or her from returning to past relevant work. 20

C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the claimant can still do

his or her past relevant work, the claimant is not disabled and the evaluation

stops. *Id*. If the claimant cannot do past relevant work, then the analysis

proceeds to the fifth step. *Id*. Step five requires the court to consider the

claimant's RFC, as well as the claimant's age, education, and past work

experience in order to determine if he or she can do other work. 20 C.F.R.

§§ 404.1520(a)(4)(v), 416.920(a)(4)(v).  If the claimant can do other work, the claimant is not disabled.  *Id.*

Applying the sequential evaluation process, the ALJ found that Plaintiff met the insured status requirements of the Social Security Act through December 31, 2008.  (Tr. at 13.)  The ALJ further determined that Plaintiff had not engaged in substantial gainful activity since the alleged onset of his disability.  *Id.*  According to the ALJ, Plaintiff had the following severe impairments: hypertension, diabetes mellitus, history of substance abuse, history of low back pain and degenerative joint disease of the cervical and lumbar spine.  *Id.*  However, she found that these impairments, either alone or in combination, did not meet or medically equal any of the listed impairments in Subpart P, Appendix 1.  *Id.* at 14.  The ALJ further determined that Plaintiff had the RFC to perform light physical exertion with a sit/stand work option and mild personality disorders.  *Id.*  According to the ALJ, Plaintiff was able to perform his past relevant work as a fast food worker.  *Id.* at 16.  The ALJ further determined that this work does not require the performance of work-related activities precluded by the claimant's RFC.  *Id.*  After considering Plaintiff's age, education, work

experience, and RFC, the ALJ determined that Plaintiff was capable of performing a significant number of other jobs such as a kitchen worker, cleaner or detailer of automobiles.  *Id*. at 16.  The ALJ concluded her findings by stating that Plaintiff was not under a disability, as defined in the Social Security Act, from June 27, 2005,  through the date of the decision. *Id*.

II.     Standard of Review.

The Court's role in reviewing claims brought under the Social Security Act is a narrow one.  The scope of its review is limited to determining (1) whether there is substantial evidence in the record as a whole to support the findings of the Commissioner, and (2) whether the correct legal standards were applied. *See Richardson v. Perales*, 402 U.S. 389, 390, 401 (1971); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002).   The Court approaches the factual findings of the Commissioner with deference, but applies close scrutiny to the legal conclusions. *See Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996).   The Court may not decide facts, weigh evidence, or substitute  its judgment for that of the Commissioner.   *Id*. "The substantial evidence standard permits administrative decision makers

to act with considerable latitude, and 'the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence.'" *Parker v. Bowen*, 793 F.2d 1177, 1181 (11th Cir. 1986) (Gibson, J., dissenting) (quoting *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966)).  Indeed, even if this Court finds that the evidence preponderates against the Commissioner's decision, the Court must affirm if the decision is supported by substantial evidence.  *Miles*, 84 F.3d at 1400.  No decision is automatic, however, for "despite this deferential standard [for review of claims] it is imperative that the Court  scrutinize the record in its entirety to determine the reasonableness of the decision reached."  *Bridges v. Bowen*, 815 F.2d 622, 624 (11th Cir. 1987).  Moreover, failure to apply the correct legal standards is grounds for reversal.  *See Bowen v. Heckler*, 748 F.2d 629, 635 (11th Cir. 1984).

III.   Discussion.

Plaintiff contends that the ALJ's decision should be reversed because it is not supported by substantial evidence and applicable law.  (Doc. 8 at 4.) Plaintiff claims that the ALJ did not properly evaluate the credibility of his

complaints of pain.  *Id.*

Subjective testimony of pain and other symptoms may establish the

presence of a disabling impairment if it is supported by medical evidence.

*See Foote v. Chater*, 67 F.3d 1553, 1561 (11th Cir. 1995).  To establish

disability based upon pain and other subjective symptoms, "[t]he pain

standard requires (1) evidence of an underlying medical condition and either

(2) objective medical evidence that confirms the severity of the alleged pain

arising from that condition or (3) that the objectively determined medical

condition is of such a severity that it can be reasonably expected to give rise

to the alleged pain." *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005)

(citing *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991)); *see also*

*Landry v. Heckler*, 782 F.2d 1551, 1553 (11th Cir. 1986).

The ALJ is permitted to discredit the claimant's subjective testimony

of pain and other symptoms if he articulates explicit and adequate reasons

for doing so.  *Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002); *see*

*also* Soc. Sec. Rul. 96-7p, 1996 WL 374186 (1996) ("[T]he adjudicator must

carefully consider the individual's statements about symptoms with the rest

of the relevant evidence in the record in reaching a conclusion about the

credibility of the individual's statements.")

Although the Eleventh Circuit does not require explicit findings as to credibility, "'the implication must be obvious to the reviewing court.'" *Dyer*, 395 F.3d at 1210 (quoting *Foote*, 67 F.3d at 1562). "[P]articular phrases or formulations" do not have to be cited in an ALJ's credibility determination, but it cannot be a "broad rejection which is "not enough to enable [the district court or this Court] to conclude that [the ALJ] considered his medical condition as a whole." *Id*. (internal quotations omitted). In assessing credibility of Plaintiff's statements, factors in addition to objective medical evidence should be considered, which include daily activities, as well as medication and its effects. 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3); *see also Macia v. Bowen*, 829 F.2d 1009, 1011 (11th Cir. 1987).

In this case, it is clear Plaintiff met the first prong of the Eleventh Circuit's pain standard. However, the ALJ rejected Plaintiff's subjective claims of pain because they were inconsistent with Dr. Iyer's objective tests showing good results in range of motion, ambulation, and bending testing. (Tr. at 15.) Furthermore, the ALJ found the claimant's statements

concerning the intensity, persistence and limiting effects of that pain not entirely credible.  *Id*. at 14.

In all social security disability cases, the claimant bears the ultimate burden of proving disability, and is responsible for furnishing or identifying medical and other evidence regarding his impairments. *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Doughty v. Apfel*, 245 F.3d. at 1278; 42 U.S.C. § 423(d)(5) ("[a]n individual shall not be considered to be under a disability unless he furnishes such medical and other evidence of the existence thereof as the Commissioner of Social Security may require").  The regulations also establish that the claimant's burden is to provide the relevant medical and other evidence he believes will prove his alleged disability.  *See* 20 C.F.R. §§ 404.1512(a) and (c).  Moreover, the claimant's burden  is to provide a medical record that is complete, and if he or she fails to do so, the ALJ will make a decision based on the evidence of record.  *See* 20 C.F.R. §§ 404.1513(e), 404.1516.

Plaintiff's argument centers around medical evidence provided in Quality of Life Health Services records and contained within the record. (Doc. 8 at 4-5.)  In support of his assertion that the ALJ improperly

discredited his subjective complaints of pain, Plaintiff cites to SSR 96-7P,

which states:

> In general, a longitudinal medical history demonstrating an individual's attempts to seek medical treatment for pain or other symptoms and to follow that treatment once it is prescribed lends support to an individual's allegations of intense or persistent pain or other symptoms for the purposes of judging the credibility of the individual's statements.

*See* SSR 96-7P 1996 WL 374186 at *7.

Plaintiff's argument, however, is not persuasive.  For example, a chronological review of those records provides that Plaintiff first sought treatment at Quality of Life Health Services on June 27, 2005, for uncontrolled blood sugar and dizziness.  (Tr. at 260.)  Plaintiff was prescribed medications to control blood pressure, blood sugar and directed to abstain from alcohol use and to return for a follow up visit one week later. *Id.* at 261.  There is nothing in the record to indicate he followed these instructions, nor did he return for a follow up.  *Id.*

On July 19, 2005, Plaintiff was admitted to Northeast Alabama Regional Medical Center with left flank and left-side pain.  (Tr. at 99.)  Plaintiff remained in the hospital for several days of observation and diagnostic

testing including, but not limited to, CT, MRI and X-Ray imaging.   Of particular interest are the comments made by Dr. Bodne, a Radiologist, in reference to X-Rays of Plaintiff's spine.  *Id*. at 113.  Dr. Bodne's July 21, 2005 report concluded that Plaintiff's "lumbar type vertebrae are intact and in good alignment and without evidence of spondylolysis." *Id*.  Plaintiff was discharged on July 22, 2005, in stable condition with a diagnosis of ethanol abuse, tobacco abuse, cocaine abuse and diabetes mellitus type II, and instructed to follow up with his primary medical doctor within two to three weeks for blood  pressure control.  *Id*. at  99.

   Again, the records reflect that Plaintiff failed to follow the instructions of his treating physician in that the follow up visit which should have occurred in mid-August, 2005, did not take place until September 13, 2005. (Tr. at 258.)  At that time, the record indicates that Plaintiff was diagnosed with peripheral neuropathy and back pain and instructed to return for a follow-up visit in four to six weeks.  *Id*. at 259.  There is no indication of any limiting instructions or restrictions given in conjunction with this particular examination.  *Id*.

   Plaintiff was next seen at Quality of Life Health Services on October

20, 2005, for "pain all over" and given a diagnosis of peripheral neuropathy, ethanol abuse, and bronchitis. (Tr. at 256-57.) The record provides that the above-mentioned examination was the final occasion in which Plaintiff sought medical attention for the remainder of 2005. *Id*.

According to the record, nearly eight months passed before Plaintiff resumed treatment at Quality of Life Health Services. (Tr. at 254.) The record does not contain any evidence that Plaintiff sought medical attention for his condition during this eight month period. *Id*. at 254-56.

The above-mentioned portion of the record contains sufficient evidence to support the ALJ's finding on the credibility of Plaintiff's subjective complaints of pain. Furthermore, the remainder of the record to which Plaintiff directs the Court's attention, contains additional medical evidence supportive of the ALJ's finding.

Plaintiff further argues that the ALJ failed to give substantial weight to the objective medical evidence in support of his allegations of moderately severe back pain. (Doc. 8 at 6-7.) Although the ALJ acknowledged the existence of moderately severe degenerative joint disease of the lumbar spine, she made the determination that medical records subsequent to

August 2006 failed to indicate any prescribed treatment or restrictions.  (Tr. at 15.)   Plaintiff argues that the ALJ's statement is irrational and not supported by substantial evidence.  (Doc. 8 at 7.)

Review of the medical record from August 2006 through December 2006 indicates that Plaintiff was treated at Quality of Life Health Services on four separate occasions.  On August 18, 2006, Plaintiff was in the offices of Quality of Life Health Services for treatment of injuries sustained from a fall while playing cards. (Tr. at 250.)  Although  Plaintiff  was given a shot for pain and prescribed medications for pain, the record offers no specific indication that  Plaintiff sought treatment for low back pain on this occasion. *Id*. at 250-51.   On that occasion Plaintiff was advised to seek further treatment for his shoulder, arm, wrist and leg injuries at a local emergency room facility and, to otherwise, return to Quality of Life Health  services five days later.  *Id*.

Then on August 23, 2006, Plaintiff returned to Quality of Life Health Services as previously directed.  *Id*. at 248-49.  The record reflects that the nature of this visit was follow up treatment for those recent injuries, rather than as treatment for low back pain.  *Id*.

Plaintiff  was treated at Quality of Life Health Services on October 13,

2006, and again on December 6, 2006, specifically for back pain, however,

the record also provides that he failed to fill, and subsequently, take the

medications prescribed for that pain.  (Tr. at 244-47.)  Plaintiff reported

that he could not afford his medications due to a lack of income, however

the record also contains evidence that he continued to use alcohol and

tobacco during this time.  *Id*. at 175, 223.  Additionally, the record indicated

that Plaintiff's treatment at Quality of Life Health Services abruptly ended

following the December 6, 2006 office visit and did not resume until seven

months later on July 12, 2007.  *Id*. 244, 282.

Plaintiff further argues that the ALJ erroneously based her decision on

the report of Dr. Iyer.  (Doc. 8 at 7.)  The ALJ considered the consultative

evaluation conducted by Dr. Iyer on February 3, 2006, and from his

comments determined that Plaintiff exhibited a full range of motion in his

lumbar spine and a slight decrease in range of motion in his cervical spine.

(Tr. at 15.)  Additionally, the ALJ noted that Dr. Iyer was of the opinion  that

Plaintiff may have some impairment of function involving overhead activities

but suggested no other limitations.  *Id*.  Dr. Iyer's opinion is consistent with

the previously referenced report of Dr. Bodne from July 21, 2005.   In

consideration of Dr. Iyer's evaluation, and the record as a whole, the ALJ

determined that Plaintiff did not seem to possess any significant  restriction

of function involving the functions of sitting, standing, walking, handling,

hearing or speaking.  *Id*.  The Court agrees.

The aforementioned references to Plaintiff's medical records are

supportive of the ALJ's findings that the objective medical evidence does not

confirm the severity of the alleged pain, and the objectively determined

medical conditions are not of such severity to reasonably expect the alleged

pain.   The objective medical and other evidence supports the ALJ's

conclusion that Plaintiff's impairments did not cause disabling limitations,

and instead shows that he could perform his past relevant light, unskilled

work as a fast food worker.

Contained within Plaintiff's record is a time-line.  Plaintiff has asked

the adjudicator to focus on that segment which begins on June 27, 2005, and

runs through October 11, 2007.  Within this twenty-eight month span, there

are two significant interruptions; an eight month span from October 2005

through June 2006, and a seven month span from December 2006 through

July 2007, in which continuity in treatment is broken.  The ALJ's findings are conclusive in that Mr. Henry has not demonstrated that he consistently sought competent medical attention for severe low back pain.  This further supports the ALJ's ruling that Plaintiff was not under a disability.

IV.   Conclusion.

Upon review of the administrative record, and considering all of Mr. Henry's arguments, the Court finds the Commissioner's decision is supported by substantial evidence and in accord with the applicable law.   A corresponding order will be entered contemporaneously with this Memorandum of Opinion.

Done this 8th day of July 2010.

_____
L. SCOTT COOGLER
UNITED STATES DISTRICT JUDGE
**153671**